**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**RUTH MAY,**

        Plaintiff,

**v.**                                 **Civil Action No. 3:12-CV-43
(GROH)**

**NATIONSTAR MORTGAGE, LLC, and
THEO L. CHAMBERS,**

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING REMAND AND COMPELLING ARBITRATION

Pending before this Court are plaintiff Ruth May's Motion to Remand [Doc. 7], filed June 4, 2012; defendant Nationstar Mortgage, LLC,'s Motion to Compel Arbitration [Doc. 13], filed June 26, 2012; and defendant Theo L. Chambers' Motion to Dismiss [Doc. 17], filed June 28, 2012.  These motions have since been fully briefed and are now ripe for decision.  Having reviewed the record and considered the arguments of the parties, this Court concludes that the motion to remand should be **DENIED**, the motion to compel arbitration should be **GRANTED**, and the motion to dismiss should be **DENIED**.

## BACKGROUND

**I.**      **Factual Allegations and Documentation**

In 1988, Ruth May and her now-deceased husband purchased a home in Martinsburg, West Virginia.  In 2004, a Texas company named Nationstar Mortgage, LLC, then known as Centex Home Equity Company, LLC ("Nationstar"), repeatedly contacted May by telephone offering to refinance her home loan at a low interest rate.  After several

calls, May agreed and provided her financial information over the telephone. Nationstar also required May to provide the financial information of Harold Bartles, whom May describes as "a friend who did not reside in the home, did not have an ownership in the home, and did not intend to assist in paying on the loan." ([Doc. 1-3] at ¶ 8(a)).

Nationstar thereafter arranged for a West Virginia notary named Theo L. Chambers to bring the loan documents to May at her home on November 18, 2004. On that day, Chambers brought the loan documents to May, instructed her where to sign, and notarized her signature. Chambers, as a non-attorney, did not provide May any advice or explanation regarding the documents, which included a note, a deed of trust, and an arbitration agreement.

Pursuant to the note, dated November 18, 2004, May and Bartles agreed to pay Nationstar $100,000 over a thirty-year term at an interest rate of 8.75%. Monthly principal and interest payments of $786.71 were to be sent to Dallas, Texas. No escrow account was established for property taxes and insurance. The note bears the signatures of both May and Bartles. Pursuant to the deed of trust, dated November 18, 2004, Nationstar was granted a security interest in the May home. The deed of trust, prepared by "Leslie Damato," likewise bears the signatures of both May and Bartles. Those signatures were notarized by Chambers the same day.

May and Bartles also signed a one-page arbitration agreement on November 18, 2004. Specifically, the parties agree that "if any Dispute arises, either You or We may choose to have the Dispute resolved by binding arbitration" and that by agreeing to arbitrate they would "give up some rights, including the right to go to court and the right to a jury trial." ([Doc. 13-1] at 1). The agreement defines "Dispute" as "any case, controversy,

dispute, tort, disagreement, lawsuit or claim now or hereafter existing between You and Us" and explained that the term included "anything that concerns: this Agreement; any Credit Transaction, including, but not limited to, the origination or servicing of such Credit Transaction . . .." (Id.). However, the agreement excepts from the definition "any action to effect a foreclosure; any action to obtain possession of any property securing the Credit Transaction; any action for prejudgment injunctive relief or appointment or receiver(s); and any claim where We seek damages or other relief because of Your default under the terms of the Credit Transaction." (Id.). Bartles and May were subsequently married.

In 2008, May went to the courthouse to pay her property taxes and discovered that Nationstar had already made the payments on her behalf. Upon calling Nationstar, May was informed that the lender had established an escrow account for property taxes and insurance. Nationstar had also force-placed flood insurance on May's property.

Though Bartles died in 2009, May has been able to make regular principal and interest payments throughout the life of the loan, up through and including the March 2012 payment. Nationstar routinely represents that May is behind on her loan and instituted foreclosure proceedings in February 2012.

## II.   Procedural History

On March 26, 2012, May filed suit against Nationstar and Chambers in the Circuit Court of Jefferson County, West Virginia. The Complaint [Doc. 3-1] contains five causes of action.

Count I is a claim for unconscionable conduct arising under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-101, *et seq.*, based in part upon the allegation that "Chambers conducted the closing in a hurried

3

manner and failed to provide adequate explanation of the documents, instead instructing [May] where to sign." ([Doc. 1-3] at ¶ 20(a)). As relief for Count I, May seeks a declaration that her loan was induced by unconscionable conduct, actual damages equivalent to the amount paid plus the amount claimed due under the loan, and statutory penalties. Count II is a claim for unauthorized practice of law based upon the allegation that Chambers conducted the closing despite the fact that he "could not and did not do so with the responsibilities of a real estate loan closer with professional expertise therein, namely a licensed attorney." ([Doc. 1-3] at ¶ 24). As relief for Count II, May seeks a declaration that the failure to use an attorney licensed in West Virginia to perform a real estate transaction amounts to the unauthorized practice of law. Count III alleges that Nationstar and Chambers acted in the furtherance of a joint venture to originate the loan at issue, thus opening them to joint and several liability. Count IV asserts, *inter alia*, that Nationstar foreclosed in bad faith. Count V alleges that Nationstar used unfair means of debt collection, in violation of the WVCCPA.

On May 4, 2012, Nationstar removed the above-styled matter to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 [Doc. 1]. Nationstar argues that complete diversity exists once this Court disregards the citizenship of Chambers, whom Nationstar contends has been fraudulently joined. In addition, Nationstar argues that the face of the Complaint dictates that the amount in controversy is greater than $75,000.

On June 4, 2012, May filed the instant Motion to Remand [Doc. 7]. While she does not dispute the requisite amount is in controversy, May asserts that Chambers is not fraudulently joined. Specifically, May argues that a 2010 advisory opinion by the Unlawful Practice of Law Committee of the West Virginia State Bar holds that conducting a real

estate closing constitutes the practice of law.  Moreover, May argues that Chambers may be held liable for unconscionable conduct even though he is a not a party to her loan.

On June 15, 2012, Nationstar filed a Memorandum in Opposition [Doc. 9] to May's motion to remand.  Nationstar contends that a notary engages in the practice of law only if he or she provides explanation to the borrower, which May affirmative alleges Chambers did not do.  In any event, Nationstar argues that May's unauthorized practice of law claim against Chambers is untimely because it arises exclusively from her 2004 closing.  Finally, Nationstar asserts that a non-party to a contract cannot be held liable for unconscionable conduct.

On June 25, 2012, May filed a Reply [Doc. 12] supplementing her previous arguments in support of remand.  Specifically, May argues that her claim for unauthorized practice of law against Chambers is not time-barred because she seeks only equitable relief as a remedy, i.e., a declaration that the failure to use an attorney licensed in West Virginia to perform a real estate transaction amounts to the unauthorized practice of law.

On June 26, 2012, Nationstar filed the instant Motion to Compel Arbitration [Doc. 13] seeking enforcement of the arbitration agreement entered into between May and Nationstar as part of their loan transaction.  In support of its motion, Nationstar argues that May's claims clearly fall within the scope of the arbitration agreement.

On July 10, 2012, May filed a Response in Opposition [Doc. 24] to Nationstar's motion to compel arbitration.  May asks this Court to find that the arbitration agreement is unconscionable and thus unenforceable.  Among other things, May argues that the arbitration agreement is unconscionable because it reserves only Nationstar's right to go to court.

On July 20, 2012, Nationstar filed a Reply [Doc. 29] supplementing its previous arguments in support of arbitration.  Specifically, Nationstar argues that because the arbitration agreement defines as an arbitrable dispute "anything that concerns" the arbitration agreement itself, the question of whether the arbitration agreement is enforceable is an issue for the arbitrator.

In the meantime, on June 28, 2012, Chambers filed the instant Motion to Dismiss [Doc. 17] arguing that May has failed to state a claim against him upon which relief can be granted.  In support of his motion, Chambers asserts essentially the same arguments that Nationstar articulated in arguing that Chambers is fraudulently joined.  On July 11, 2012, May filed a Response in Opposition [Doc. 25] to Chambers' motion to dismiss.  May argues that she has stated plausible claims against Chambers for the same reasons that he is not fraudulently joined.  On July 12, 2012, Chambers filed a Reply [Doc. 28] reiterating his previous arguments in support of dismissal.

Therefore, the parties' motions present three sequential issues, namely: (1) whether this Court has diversity jurisdiction, and if so, (2) whether this Court should enforce the arbitration agreement contained in the loan documents, and if not, (3) whether this Court should dismiss Chambers.

## DISCUSSION

### I.  Applicable Standards

#### A.  Motion to Remand

Defendants in civil actions may remove a matter from state to federal court if the latter forum has original subject matter jurisdiction.  This requirement can be based upon

diversity jurisdiction or federal question jurisdiction. 28 U.S.C. § 1441. A federal district court has diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332.

"The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Maryland Stadium Authority v. Ellerbe Becket Incorporated*, 407 F.3d 255, 260 (4th Cir. 2005) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941). If federal jurisdiction is doubtful, a remand to state court is required. *Maryland Stadium*, 407 F.3d at 260. On the other hand, if this Court has jurisdiction, it is required to exercise it. *Gum v. General Electric Co.*, 5 F.Supp.2d 412, 415 (S.D. W.Va. 1998) ("It is well-established federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'").

### B.    Motion to Compel Arbitration

Nationstar relies upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, in support of its motion to compel arbitration. Specifically, section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party can compel arbitration by establishing:   (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by

the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute. *See **Adkins v. Labor Ready, Inc.***, 303 F.3d 496, 500-01 (4th Cir. 2002).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" ***Adkins**,* 303 F.3d at 500 (quoting ***Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.***, 460 U.S. 1, 24 (1983)). Indeed, the FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." ***Circuit City Stores, Inc. v. Adams***, 532 U.S. 105, 111 (2001). Moreover, a court is required to "resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" ***Hill v. PeopleSoft USA, Inc.***, 412 F.3d 540, 543 (4th Cir. 2005) (quoting ***Moses H. Cone Mem'l Hosp.***, 460 U.S. at 24-25).

Finally, there is one important caveat to the reach of the FAA. "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. ***Hill**,* 412 F.3d at 543 (citing ***First Options of Chicago, Inc. v. Kaplan**,* 514 U.S. 938, 944 (1995); ***Moses H. Cone Mem'l Hosp.**,* 460 U.S. at 24). For example, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *See **Doctor's Assocs., Inc. v. Casarotto***, 517 U.S. 681, 687 (1996) (citations omitted).

### C.     Motion to Dismiss

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs.,***

*Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Mills*, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 883-884 (2009).

## II.  Analysis

### A.  Motion to Remand

May argues that remand is required because Chambers is a properly joined, non-diverse party. In opposing remand, Nationstar argues that Chambers has been fraudulently joined and thus that his citizenship should be disregarded for diversity purposes. This Court agrees with Nationstar.

A district court may disregard the citizenship of defendants who were fraudulently joined. *Herbalife Intern., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 839515, at *3 (N.D. W.Va. Mar. 30, 2006). "To show fraudulent joinder, the removing party must

demonstrate . . . that there is no possibility that plaintiff would be able to establish a cause of action against the instate defendant in state court."  **Hartley v. CSX Transp., Inc.**, 187 F.3d 422, 424 (4th Cir. 1999) (internal quotations omitted).

The Complaint contains two substantive causes of action directed against Chambers.[1]  Count I asserts that Chambers unconscionably induced May's loan by "conduct[ing] the closing in a hurried manner and fail[ing] to provide adequate explanation of the documents, instead instructing [May] where to sign."  ([Doc. 1-3] at ¶ 20(a)).  Count II alleges that Chambers committed unauthorized practice of law by conducting the closing despite the fact that he "could not and did not do so with the responsibilities of a real estate loan closer with professional expertise therein, namely a licensed attorney."  (Id. at ¶ 24). To find that Chambers was fraudulently joined, therefore, requires this Court to conclude that May could not possibly succeed on either claim.

### 1.    Unconscionable Conduct (Count I)

In directing her claim for unconscionable conduct in part against Chambers, May alleges that Chambers "conducted the loan closing in a hurried manner and failed to provide adequate explanation of the documents, instead instructing [her] where to sign." ([Doc. 1-3] at ¶ 20(a)).

---

[1]Count III pleads the theory of joint venture.  Once a joint venture is established, "each venturer is liable for the unlawful acts of a co-venturer when the act is committed within the scope of the venture and with the implied consent of the venturer."  **Short v. Wells Fargo Bank Minn., N.A.**, 401 F.Supp.2d 549, 563 (S.D. W.Va. 2005).  In the event that May's substantive causes of action against Chambers fail, therefore, there will be no unlawful acts to support a joint venture.

Assuming as some courts have found that an unconscionable conduct claim can lie against a non-party to the contract allegedly induced, *see e.g., **Short v. Wells Fargo Bank Minn., N.A.***, 401 F.Supp.2d 549, 565 (S.D. W.Va. 2005), this Court nevertheless concludes that May has no possible claim against Chambers for unconscionable conduct.

As indicated by May's own allegations as well as a review of the signature page of the deed of trust, Chambers acted solely as a notary on the day in question. He brought the loan documents to May, instructed her where to sign, and notarized her signatures. That Chambers provided no explanation of the documents actually supports the conclusion that he rendered services solely in his role as a notary. *See **Bennett v. Lending Solutions, Inc.***, 2011 WL 4596973, *11 (S.D. W.Va. Sept. 30, 2011) (recognizing absence of "binding authority" imposing an "affirmative duty [upon] a closing agent to explain the terms of a home loan and to ensure that the borrower understands the essential terms of the transaction"); ***Wolfe v. Greentree Mortg. Corp.***, 2010 WL 391629, *3 (N.D. W.Va. Jan. 26, 2010) (emphasizing that "[t]he sole purpose of the notary is merely to acknowledge the authenticity of the signature"). In fact, the Uniform Notary Act empowers the Governor or the Secretary of State to revoke the commission of any notary public who "[e]ngages in the unauthorized practice of law[.]" W.Va. Code § 29C-7-101(g). Moreover, that May alleges the closing was "hurried" is of no consequence to the proprietary of Chambers' services rendered as a notary. After all, May does not dispute that she signed the loan documents. ***Wolfe***, 2010 WL 391629, at *3 ("Given the fact that the plaintiff does not contest the fact that she, in fact, signed the deed of trust, there can be no damage emanating from the notary public's failure to properly acknowledge that signature. Since

there is no damage, there is no 'glimmer of hope' of a judgment against defendant Freda [the notary public].").  For these reasons, this Court concludes that May has no possible claim for unconscionable conduct against Chambers.

### 2.    Unauthorized Practice of Law (Count II)

In arguing that she has a possible claim against Chambers for the unauthorized practice of law, May relies upon a 2010 advisory opinion by the Unlawful Practice of Law Committee of the West Virginia State Bar, which adopted the findings of a Stipulation and Agreed Order entered by the Circuit Court of Brooke County in ***McMahon v. Advanced Title Services Co***, No. 01-C-121 (Cir. Ct. Brooke Co. Mar. 31, 2010).  The Stipulation and Agreed Order provides, as relevant here:

> It is the practice of law for a person to conduct a real estate closing (including "witness-only" or "witness" closings) for mortgage financing or real estate transactions, to or for the general consumer public or any third-party, when part of his or her responsibilities as closing agent consist of: (1) explaining, interpreting, giving an opinion and/or advising another on the meaning of terms or principles (legal or otherwise) relevant to the mortgage transaction, or in matters involving the application of legal principles to particular facts, purposes or desires; (2) instructing clients in the manner in which to execute legal documents; or (3) preparing the HUD-1 Settlement Statement, and at times, other instruments related to mortgage loans and transfers of real property and such activity may only be conducted by an attorney licensed to practice law in the State of West Virginia . . ..

([Doc. 7-2] at ¶ 53).  Based upon this passage, May contends that Chambers committed the unauthorized practice of law by conducting a "witness-only" closing in which he instructed her "in the manner in which to execute legal documents."  This Court is

unpersuaded.

As an initial matter, this Court observes that May seeks retroactive application of a 2010 advisory opinion to a 2004 closing. However, there is nothing in the 2010 advisory opinion that indicates it was intended to receive such application. As such, this Court finds it more proper to apply the 2003 advisory opinion that was effective at the time of the 2004 closing.

The 2003 advisory opinion deemed one to be practicing law whenever one undertakes to: (1) "advise another in any matter involving the application of legal principles to facts, purpose or desires;" (2) "prepare for another legal instruments of any character;" or (3) "represent the interest of another before any judicial tribunal . . .." Advisory Opinion No. 2003-001 at p. 4. The 2003 advisory opinion then identifies the "simple execution of documents" as a "ministerial and clerical function[ ]" that does not involve the application of legal principles to facts and thus is not the practice of law. Id.

Applying the 2003 advisory opinion here, this Court must conclude that May has no possible claim for unauthorized practice of law against Chambers based upon the allegations in her Complaint. May alleges that Chambers was a "notary," who merely "instructed her where to sign" and "notarized the [loan] documents." ([Doc. 1-3] at ¶ 9). May further alleges that Chambers was "unfamiliar with the documents and unable to explain any of the documents or the essential details of the transaction . . .." (Id. at ¶ 10(a)). Based upon these allegations, this Court can only conclude that the service provided by Chambers at the 2004 closing was simply a ministerial and clerical function that did not constitute the practice of law, let alone the unauthorized practice of law. *Accord **Shelton v. Wells Fargo Bank***, 2010 U.S. Dist. LEXIS 143609, *12-13 (N.D. W.Va.

13

Aug. 13, 2010).

Assuming *arguendo* that Chambers engaged in the unauthorized practice of law, this Court nevertheless finds that any such claim arising from those services provided at the November 2004 closing, as alleged in May's March 2012 Complaint, is untimely. The well-established principle that "equity follows the law" creates a presumption that a defendant would be prejudiced by a plaintiff's failure to bring an equitable claim within the statute of limitations applicable to an analogous action at law. *See* **Consolidation Coal Co. v. Consolidation Coal Co., Inc.**, 228 F.Supp.2d 764, 768-69 (N.D. W.Va. 2001) ("Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a 'presumption of laches.' This principle 'presumes' that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period.") (quoting **Tandy Corp. v. Malone & Hyde, Inc.**, 769 F.2d 362, 365 (6th Cir. 1985)). A claim seeking damages for the unauthorized practice of law is governed by a two-year statute of limitations. See W.Va. Code § 55-2-12. Because May failed to file the instant action until almost eight years after the closing, this Court presumes that Chambers would be prejudiced by allowing May to seek equitable relief on a claim for the unauthorized practice of law. Avoiding this prejudice is an alternative basis for finding that May has no possible claim against Chambers for the unauthorized practice of law.

Therefore, this Court finds that defendant Chambers was fraudulently joined and will disregard his citizenship in determining whether complete diversity exists among the properly joined parties. Because Chambers is the only named party that is non-diverse, and his citizenship has been disregarded, this Court finds that complete diversity exists. As

such, because May does not challenge whether the requisite amount is in controversy, this Court concludes that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, May's motion to remand should be **DENIED**.

## B.     Motion to Compel Arbitration

Despite the existence of subject matter jurisdiction, Nationstar contends that this Court should submit May's claims to arbitration pursuant to the arbitration agreement signed as a rider to her loan.  For the reasons that follow, this Court agrees.

### 1.     Nationstar Has Satisfied the Elements for Compelling Arbitration.

As outlined above, a party can compel arbitration by establishing:  (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute.  *See Adkins*, 303 F.3d at 500-01.

In the instant case, there can be no dispute that the first, third, and fourth elements are satisfied.  First, there is clearly a dispute between the parties, as evidenced by May's filing of this lawsuit.  Second, the contract at issue is related to interstate commerce, as it was formed between citizens of different states and involves a loan to be serviced through interstate commerce.[2]  Finally, May has refused to arbitrate, which is also evidenced by the

---

[2]The question of what constitutes interstate commerce has been broadly interpreted, and the Supreme Court of the United States has described the FAA's "reach expansively as coinciding with that of the Commerce Clause."  *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274 (1995).  Moreover, "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce.'" *The Citizens Bank v. Alafabco, Inc.*, 539 U.S.

filing of this lawsuit.

Nationstar has also satisfied the third element, requiring "a written agreement that includes an arbitration provision which purports to cover the dispute." *See Adkins*, 303 F.3d at 500-01. The loan documents include an arbitration agreement that purports to cover all origination and servicing claims May might bring against Nationstar. Specifically, the arbitration agreement provides that "if any Dispute arises, either You or We may choose to have the Dispute resolved by binding arbitration" and that by agreeing to arbitrate they would "give up some rights, including the right to go to court and the right to a jury trial." ([Doc. 13-1] at 1). The agreement defines "Dispute" as "any case, controversy, dispute, tort, disagreement, lawsuit or claim now or hereafter existing between You and Us" and explained that the term included "anything that concerns: this Agreement; any Credit Transaction, including, but not limited to, the origination or servicing of such Credit Transaction . . .." (Id.).

May has asserted unconscionable conduct, breach of contract, and unfair debt collection against Nationstar. Each of these claims arises from the origination or servicing of the loan. As such, the arbitration agreement purports to cover May's claims, and thus, Nationstar has satisfied every element required to compel arbitration. Accordingly, unless May can present a defense to the enforceability of the arbitration agreement, this Court will be compelled to order her claims to arbitration.

_____

52, 57 (2003).

**2.    The Question of Whether the Arbitration Agreement is Unconscionable Has Been Delegated to Arbitrator.**

In asking this Court not to enforce the arbitration agreement in question, May relies exclusively upon the generally applicable state contract law defense of unconscionability. Among other things, May argues that the arbitration agreement is substantively unconscionable because it lacks mutuality. Pursuant to the arbitration agreement, May waives her right to access the courts for any claim arising from the subject consumer loan transaction, including her instant origination and servicing claims. (See [Doc. 13-1] at 1) ("A Dispute includes, but is not limited to, anything that concerns: this Agreement, any Credit Transaction including, but not limited to, the origination or servicing of such Credit Transaction . . .."). However, the arbitration agreement preserves Nationstar's right to a judicial forum in every conceivable situation where Nationstar would wish to secure judicial relief against May. (See Id.) ("A Dispute does not include: any action to effect a foreclosure; any action to obtain possession of any property securing the Credit Transaction; any action for prejudgment injunctive relief or appointment of receiver(s); and any claim where We seek damages or other relief because of Your default under the terms of the Credit Transaction.").

In responding to May's claims of unconscionability, Nationstar argues that because the arbitration agreement defines as an arbitrable dispute "anything that concerns" the arbitration agreement itself, the question of whether the arbitration agreement is enforceable is an issue for the arbitrator. In support of this position, Nationstar cites ***Rent-A-Center, West, Inc. v. Jackson***, 130 S.Ct. 2772 (2010).

As explained below, this Court agrees that ***Rent-A-Center*** is dispositive.

Jackson signed an arbitration agreement with his employer Rent-A-Center that provided for arbitration of disputes arising out of his employment. The agreement also provided that the arbitrator, and not a court, had exclusive authority to resolve any dispute relating to the enforceability of the arbitration agreement. Jackson subsequently filed an employment discrimination suit. Rent-A-Center moved to compel arbitration. In opposing arbitration, Jackson argued that the arbitration agreement was unconscionable under state law. Rent-A-Center responded that Jackson's unconscionability claim was not properly before the court because Jackson had expressly agreed that an arbitrator would have exclusive authority to resolve any dispute about the enforceability of the agreement. Agreeing with Rent-A-Center, the district court compelled arbitration. *See **Jackson v. Rent-A-Center-Weste Inc.***, 2007 WL 7030394, *2 (D. Nev. June 7, 2007).

On appeal, the United States Court of Appeals for the Ninth Circuit reversed, noting that "Jackson does not dispute that the language of the Agreement clearly assigns the arbitrability determination to the arbitrator," but holding that where "a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court." *See **Jackson v. Rent-A-Center West, Inc.***, 581 F.3d 912, 917 (9th Cir. 2009). The Supreme Court of the United States granted a writ of certiorari.

In reversing the Ninth Circuit, the Supreme Court first characterized the provision in the arbitration agreement that reserved the issue of its enforceability to the arbitrator as a "delegation provision." ***Rent-A-Center***, 130 S.Ct. at 2777. The Court next severed the delegation provision from the rest of the arbitration agreement and explained that "unless

Jackson challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 2779. Finally, the Court concluded that because Jackson challenged only the validity of the arbitration agreement as a whole, not specifically directing any challenge against the delegation provision itself, arbitration must be compelled. *Id.* at 2779-81.

Like in *Rent-A-Center*, the arbitration agreement here includes a delegation provision. Specifically, the parties agreed that "if any Dispute arises, either You or We may choose to have the Dispute resolved by binding arbitration." ([Doc. 13-1] at 1). Among other things, the agreement defines "Dispute" as including "anything that concerns . . . this Agreement . . . ." (Id.). In light of the FAA's liberal policy favoring arbitration agreements, *see Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002), this Court finds that a dispute concerning the enforceability of the arbitration agreement is an example of "anything that concerns . . . this Agreement" and thus is an issue subject to binding arbitration. As in *Rent-A-Center*, therefore, this matter must be submitted to arbitration unless May challenges the delegation provision specifically. While May argues in her response to Nationstar's motion to compel that "[t]he arbitration in this case, *including the requirement that the validity and enforceability of the agreement [b]e arbitrated*, is substantively unconscionable," she fails to expand on this general assertion. ([Doc. 24] at 8) (emphasis added). Instead, May proceeds to attack other provisions of the arbitration agreement as unconscionable. (Id. at 8-14). Therefore, applying *Rent-A-Center*, this Court must give force to the delegation provision, leaving May's challenges of

unconscionability to the arbitrator.[3] Accordingly, Nationstar's motion to compel should be **GRANTED**.

### C. Motion to Dismiss

In light of this Court's conclusion regarding arbitration, this Court will not at this time consider Chamber's Rule 12(b)(6) motion to dismiss. Consideration of Chambers' motion will arise only in the event that the arbitrator concludes that the arbitration agreement is unenforceable, thus vesting this Court again with subject matter jurisdiction. Accordingly, Chambers' motion to dismiss should be **DENIED WITHOUT PREJUDICE**.

### <u>CONCLUSION</u>

For the foregoing reasons, this Court concludes that plaintiff May's Motion to Remand **[Doc. 7]** should be, and hereby is, **DENIED**. In addition, this Court concludes that defendant Nationstar's Motion to Compel Arbitration **[Doc. 13]** should be, and hereby is, **GRANTED**. Accordingly, pursuant to § 3 of the FAA, the above-styled civil action is hereby

---

[3]In this regard, this Court notes that had the issue of unconscionability been properly before it, this Court would have been persuaded to strongly consider May's claim that the arbitration agreement lacked mutuality in light of its comprehensive waiver of May's right to go to court, while reserving Nationstar's right to enter the judicial forum to pursue every conceivable cause of action against May. *See **Brown v. Genesis Health Corp.**,* — S.E.2d — , 2012 W.Va. LEXIS 311, *28-29 (W.Va. June 13, 2012) ("Substantive unconscionability may manifest itself in the form of an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party. Some courts suggest that mutuality of obligation is the locus around which substantive unconscionability analysis revolves. Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability.") (internal quotation and citation omitted); Syl. pt. 6, ***Arnold v. United Companies Lending Corp.**,* 204 W.Va. 229, 511 S.E.2d 854 (1998) ("Where an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law.").

**STAYED**, while it is hereby **ORDERED** to arbitration pursuant to § 4 of the FAA.  Finally, this Court concludes that defendant Chambers' Motion to Dismiss **[Doc. 17]** should be, and hereby is, **DENIED WITHOUT PREJUDICE**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** July 24, 2012.

GINA M. GROH
UNITED STATES DISTRICT JUDGE